UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

RICARDO M. SUGGS, JR.    )
                         )
    Plaintiff            )
                         )
vs.                      )    NO: CV 2:16 cv51
                         )
                         )
WARDEN, FCI GILMER       )
                         )
    Defendant            )

## SECTION 28 U.S.C. 2241 PETITION FOR RELIEF

Now comes the Petitioner, Ricardo M. Suggs, Jr., pro-se, who moves this Honorable Court pursuant to 28 U.S.C. 2241, for a writ of habeas corpus, and in support thereof, states as follows:

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of West Virginia at Clarksburg, West Virginia, has jurisdiction over all offenses against the criminal laws of the United States which take place in that district, and also pursuant to 28 U.S.C. 2241, which provides that a 2241 petition shall be filed in the district wherein the petitioner is currently incarcerated. Petitioner is currently incarcerated in FCI Gilmer, the Bureau of

1

Prisons facility in Glenville, West Virginia, and therefore, this Honorable Court has jurisdiction to consider this matter.

## PROCEDURAL HISTORY

Petitioner was initially charged in a one count indictment in 2006 with being a felon in possession of a firearm, in violation of 18 U.S.C. Section 922(g)(1). Before he went to trial or had an opportunity to plead to that single charge, Petitioner was charged in a Superseding Indictment with the following charges: felon in possession of a firearm, in violation of 18 U.S.C. Section 922(g)(1); tampering with a witness with intent to kill, in violation of 18 U.S.C. Section 1512(a)(1)(A); tampering with a witness by use of force, in violation of 18 U.S.C. Section 1512(a)(2)(A); and tampering with a witness by corruptly persuading, in violation of 18 U.S.C. Section 1512(b)(1).

Petitioner was separately tried before a jury on the first charge and found guilty, and in a subsequent trial found guilty of the second and third offense, but not guilty on the fourth one. He was sentenced to a concurrent sentence of 120 months, 240 months, and 240 months, respectively, which aggregated to 324 months, and three years of supervised release. Petitioner filed a direct appeal, which was denied in a per curiam decision, as well as a 2255, which was also denied. Petitioner appealed that denial, but the dismissal of the 2255 was affirmed.

Respondent now files this Petition alleging errors in how his sentence has been computed, as well as for relief under newly-issued opinions of the Supreme Court which

he argues entitles him to sentence relief. Petitioner has exhausted all relevant administrative remedies.

## ARGUMENT

### I.  PETITIONER'S SENTENCE WAS INCORRECTLY CALCULATED BY THE FEDERAL BUREAU OF PRISONS

The law is well settled in the federal circuits that a 2241 petition can be entertained to contest a condition of confinement, challenge the computation or execution of a sentence, and also when "the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. Section 2255.

Petitioner respectfully argues that the Regional Director of the federal Bureau of Prisons has incorrectly calculated Petitioner's sentence, by stating the projected release date is January 29, 2030. Petitioner's original sentence was 324 months. (See Exhibit I, attached)

Petitioner had a jail time credit of 8 months and 23 days: March 1, 2006; June 8, 2006; July 25, 2006 until April 15, 2007. Taking into account the aforementioned jail time credits, and the fact that Petitioner is entitled to a good-time credit of 15% of his total sentence, the appropriate release date should be revised to July 5, 2029. None of this takes into account Petitioner's potential sentence credit afforded by the Second Chance Act, which would reduce that time served in prison up to one year.

## II. PETITIONER WAS WRONGFULLY SENTENCED TO FIRST-DEGREE MURDER ALTHOUGH THE JURY DID NOT FIND HIM GUILTY OF THAT CHARGE

Petitioner asserts that recent Supreme Court case law supports his contention that he was wrongfully sentenced to 324 months largely because he found by the district judge of having committed an offense that constituted first–degree murder, and not by the jury itself. He further alleges that he was found guilty of these enhanced charges by the district court judge by a "preponderance of evidence" standard, and not by a jury utilizing the higher standard of "beyond a reasonable doubt." Petitioner argues that this resulted in a higher sentence than he would have otherwise received, and contrary to the jury's findings.

In this instance, 2241 is the only remedy available to Petitioner to contest the length of his sentence based upon the Supreme Court decision of <u>Alleyne v. United States,</u> 133 S. Ct. 2151 (2013), which Petitioner argues should be applied in this situation. Petitioner argues that his current filing does not constitute a "second, successive" 2255 Petition, because that remedy is inadequate to address the current issue.

Petitioner was charged in Count 2 of the superseding indictment with violating Section 1512, and "an attempt to kill." Nowhere in the indictment does it mention "intent to kill," or premeditation in the act itself. <u>Superseding Indictment, Count Three.</u> This is significant because without a finding of a specific intent or premeditation to kill, there can be no finding of first-degree murder. <u>18 U.S.C. Section 1111-Murder.</u> It stands to reason that Petitioner can only then be found guilty by the language of the indictment of second-degree murder. Under Sentencing Guideline 2A2.1(a), one can only be ascribed a

level 33 if the act would have constituted first-degree murder; otherwise, the appropriate level for second-degree murder would be level 27. U.S. Sentencing Guidelines, 2A2.1(a).

According to that Sentencing Guideline, an offense level of 33 can only be found appropriate, "if the object of the offense would have constituted first degree murder." Additionally, in this case, the jury did not specifically find Petitioner guilty of first-degree murder, because that element was never included in the indictment. The district court itself conceded that Petitioner was intoxicated at the time of the incident where he was found to have violated 1512. Sentencing Transcript, page 862. Indeed, the testimony of the prosecutions own witness indicated that Petitioner was acting erratically, and the testimony also established that he had consumed large amounts of alcohol in the hours leading up to the crime. The prosecution never rebutted that evidence of Petitioner's impairment at any time during the proceedings. Sentencing Transcript, page 862.

Petitioner cites in support of his position the Third Circuit case of In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997), which applied the standard of Bailey v. United States, 516 U.S. 137 (1995). In Bailey, the Court held that the defendant could retroactively rely upon the new standard of what constituted a crime, and that he was in fact "actually innocent" of the crime for which he had been convicted, and the Court applied that to defendant Dorsainvil also. Defendant Dorsainvil:

> was convicted of use of a weapon under Section 924(c))1). Dorsainvil sought collateral relief under section 2255. In 1994, the district court denied his first Section 2255 motion. Id., at 246. In December, 1995, Bailey was decided and in April 1996 the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted. AEDPA amended Section 2255, imposing strict restrictions on 2255 petitions. However, the court concluded that 'under narrow circumstances, a petitioner in Dorsainvil's uncommon situation may resort to the writ of habeas corpus codified under 28 U.S.C. 2241' Id.

> Noting that Dorsainvil had demonstrated actual innocence because he had been convicted for conduct that the law did not make criminal, the court also reasoned that 'Dorsainvil does not have and, because of the circumstance that he was convicted for a violation of Section 924(c)(1) before the Bailey decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of Section 924(c)(a).' Id. At 251. The court stated that allowing Section 2241 to be used by someone in Dorsainvil's position '(was) hardly likely to undermine the gatekeeping provisions of Section 2255.' Id.'"

Quoted in Abdullah v. United States, 240 F.3d 683, 685-6 (8th Cir.) cert. denied, 534 U.S. 923 (2001). Although Abdullah's 2255 petition was eventually denied on other factual grounds, the well-reasoned dissent succinctly captures the procedural dilemma faced by Abdullah and Petitioner in this cause:

> In limited circumstances Section 2241 may provide a petitioner an avenue of relief where Section 2255 is inadequate or ineffective to test the legality of a conviction. As the majority notes, the Second, Third, Fourth, Fifth, and Seventh Circuits have all indicated in limited circumstances Section 2241 may be used to raise a Bailey claim where a petitioner had not had an opportunity to challenge a firearm conviction that should be set aside…See In re Dorsainvil, 119 F.3d 245 (3rd Cir. 1997; Triestman v. United States, 124 F.3d 361, 377-80 (2d Cir. 1997); In re Davenport, 147 F.3d 605, 610 (7th Cir. 1998); In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000); Reyes-Requena v. United States, 243 F.3e 893, 904-06 (5th Cir. 2001). In each of the cases cited, the prisoners filed a Section 2255 petition for relief before the Bailey opinion had issued and when it would have been futile to challenge the …statute. These circuits stated that the issue could not be raised by a second petition for Section 2255 relief…but that the prisoner **could** file for relief under…2241. Abdullah, at 693-694 (emphasis added).

To the extent that previous court orders purport to restrict Petitioner's ability to file a subsequent 2241 petition, the decision of the Supreme Court in Alleyne has arguably eliminated the reasoning unpinning those district court's holdings in Petitioner's case, because Alleyne should be applied retroactively.,

In Alleyne, the Supreme Court held that, "(a)ny fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond

6

a reasonable doubt…" Alleyne, at 2155. This holding went beyond the holding of Apprendi, which stated, "any facts that increase the prescribed range of penalties to which a criminal defendant is exposed…are elements of the crime…" Apprendi at 484. Thatcourt went on to say that the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. Apprendi, at 490.

The Sixth Amendment sets forth that anyone accused of a crime shall have the right to a trial "by an impartial jury," and combined with the Due Process clause, means that each element of a crime shall be proven to a jury beyond a reasonable doubt. In re Winship, 397 U.S. 358 (1970). Alleyne constitutes the logical application of this doctrine as it applies to mandatory minimum situations.

There can be no doubt by studying the rulings of the Supreme Court that Alleyne, as opposed to Apprendi, announced a new substantive rule of law which must be applied retroactively. Alleyne concerned the issue of sentencing factors which could be found by the judge, and transformed the sentencing process by stating that "(d)efining facts that increase a mandatory statutory minimum (are) part of the substantive offense (which) enables the defendant to predict the legally applicable penalty from the face of the indictment." Alleyne, at …..(emphasis added). Therefore, "(t)his reality demonstrates that the core crime and the facts triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury…" Alleyne, at. Alleyne overruled Harris v. United States, 536 U.S. 545, which had been used to narrow the effect of Apprendi, in which the Supreme Court declined to determine which facts are "elements of a crime."

7

Petitioner as a result is now entitled to a reconsideration of the decision by the sentencing judge in his case that the "facts" adduced by the U.S. Probation Office in Petitioner's PSI. To hold otherwise would be to subject Petitioner to enhanced penalties not found as elements of the crime by a jury, and "convict (him) of an act that the law does not make criminal (and give him) a punishment that the law cannot impose…" Schriro v. Summerlin, 542 U.S. 348, 352 (2004).

The logical application of other well-settled elements of Supreme Court decisions also dictate a retroactive application was intended for Alleyne. It is now axiomatic that the holding of In re Winship should be applied retroactively. Examining the case of Tyler v. Cain, 533 U.S. 566 (2001), we see that the Court held that multiple holdings of the Court, taken together, "necessarily dictate" retroactivity of the new rule, by explaining: "if we hold in case one that particular type of rule applies retroactively to cases on collateral review and hold in case two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review." Tyler, at 688. "The matter is one of logic. If case one holds that all men are mortal and case two holds that Socrates is a man, we do not need case three to hold that Socrates is mortal." Tyler, at 672 and 673. Taken together, this requires one to acknowledge Apprendi as the procedural antecedent of Alleyne, for to hold otherwise would not follow the pattern of other Supreme Court decisions.

There is also other Supreme Court precedent for holdings to be retroactive, without being expressly designated as such, as in Alleyne. In Tyler, Justice O'Connor's concurrence, which became the law of the case, stated that such a decision could be "made retroactive" upon its announcement without the Court's express statement to that

effect. In re Holaday, 331 F. 3d 1169, 1172-73 (11th Cir. 2003) also held just that, stating that a new rule would be retroactive based upon Tyler.

Petitioner's factual circumstance puts him squarely in the fact situation as set forth in Alleyne, because he was given an extended period of imprisonment based upon judge-found, rather than jury-determined facts. When a conviction is already final, as in Petitioner's case, a new rule announced by the Supreme Court only applies if it is a substantive rule. Schiro v. Summerlin, 542 U.S. 345, 35 (2004). A substantive rule is one that "decriminalize(s) a class of conduct (or) prohibit(s) the imposition of (certain) punishment on a particular class of persons." Saffle v. Parker, 494 U.S. 484 (1990) These substantive rules are applied retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." Schiro, 542 U.S. 352. Under current case law, Petitioner stands convicted of an enhanced offense that he was not convicted of by the jury.

Petitioner's case arose out of facts that occurred before the holdings of Apprendi, and Alleyne. At that time, prosecutors did not submit to the jury any special verdict forms to show that the acts were intentional or premeditated. Spence (2000). "When a prisoner's sentence is enhanced without a valid factual basis, yet he remains incarcerated pursuant to that sentence, it follows inexorably that he is a victim of a miscarriage of justice." It should be emphasized that the common thread of the myriad filings of Petitioner that he has raised this or similar arguments throughout all of his judicial proceedings.

In the instant case, Petitioner was not sentenced based upon a jury verdict, but effectively by contents of the pre sentence report (PSI) prepared and filed with the

sentencing court by the U.S. Probation Department. Based upon its sentence calculation and recommendations, relying on purported and unproven facts provided by the government prosecutors, and utilizing the concept of "relevant conduct" as defined in the United States Sentencing Guidelines (USSG) 1B1.3, the PSI charged Petitioner with criminal activities and offenses not charged in the indictment.

However, based upon the district court's jury instructions, the jury was not allowed to make its "beyond a reasonable doubt" determination as to Petitioner's guilt of first degree murder..

Based upon unproven, purported facts, the PSI alleged that this raised Petitioner's adjusted base offense level to 33, triggering a greater sentence than the level 27 that should have applied, and the district court, in accordance with USSG 6A1.3, only found Petitioner guilty by a preponderance of evidence.

### III. PETITIONER'S INDICTMENT, JURY INSTRUCTIONS, AND SENTENCING WERE FLAWED BECAUSE SENTENCING INSTRUCTIONS DID NOT MATCH INDICTMENT, IN VIOLATION OF PETITIONER'S FIFTH AMENDMENT RIGHTS UNDER MOLINA V. MARTINEZ

It is uncontroverted fact that the language of Counts 2 and 3 of Petitioner's Superseding Indictment, Jury Instructions, and the Statute under which he was convicted did not match. That indictment and jury instruction stated as follows:

> COUNT TWO: (Tampering with a Witness-Intent to Kill). On or about July 21, 2006 at or near Steubenville, Jefferson County, Ohio, defendant…, with intent to prevent the attendance and testimony of a person in an official proceeding, to wit: the jury trial schedule in the matter of United States v. Ricardo M. Suggs,…did attempt to kill that person, known to the Grand Jury by the initial, "T.S", by shooting him…

Superseding Indictment, page 2.

Contrast this with the jury instruction for the same count:

> COUNT TWO: (Tampering with a Witness – Intent to Kill) Count Two of the indictment charges the defendant with tampering with a witness with intent to kill in violation of Title 18, U.S.C., Section 1512 (a) (a) (A).
>
> In order to convict the defendant…the government must prove the following essential elements beyond a reasonable doubt:
> FIRST: On or about July 21, 2006, the defendant…knowingly attempted to kill the person identified in the indictment as witness; and
> SECOND: The defendant did so with the intent to prevent the testimony of that person in an official proceed.
>
> COUNT THREE: (Tampering with a Witness-Use of Force). On or about July 21, 2006, at or near Steubenville, Jefferson County, Ohio, defendant, Ricardo M. Suggs, Jr., with intent to influence, delay, and prevent the testimony of a person in an official proceeding, to wit: the jury trial scheduled in the matter of United States v. Ricardo M. Suggs, in the United States District Court for the Northern District of West Virginia, Case Number 5:06CR27, did use physical force and the threat of physical force against that person, known to the Grand Jury a by the initials, "T.S", and that person's mother, by shooting them and did attempt to do so, IN VIOLATION OF TITLE 18, UNITED STATES CODE SECTION 1512(a)(2)(A).

Superseding Indictment.

Contrast this with the following jury instruction for the same count:

> Count Three of the indictment charge (sic) the defendant with tampering with a witness through the use of force in violation Title 18, United States Code, Section 1512(a)(2)(A).
>
> In order to convict the defendant of Count Three, the government must prove the following essential elements beyond a reasonable doubt:
> FIRST: On or about July 21, 2006, the defendant…knowingly intimidated or used physical force against the person identified in the indictment as a witness: and
> SECOND: The defendant did so with the intent to influence, delay or prevent the testimony of that person in an official proceeding…

Jury Instructions, pages 11 and 12.

Superseding Indictment, and Jury Instructions, Counts Two and Three.

Thus the district court's modification of the language of the Superseding Indictment at the time of the submission of the Jury Instructions, constituted a constructive amendment of the indictment, which are not permitted in the Fourth Circuit.

"Constructive amendments are error per se and, given the Fifth Amendment right to be indicted by a grand jury, must be corrected on appeal even when ot preserved by objection." United States v. Foster, 507 F.3d 233, 243 (4th Cir. 2007). The Fourth Circuit in that decision followed its precedent set forth in U.S. v. Floresca, 38 F.3d 706, 711 (a4th Cir. 1994), where it held that the district court had constructively amended Floresca's indictment when it instructed a jury on an 18 U.S.C. Section 1512(b)(1) violation, not included in the indictment, instead of Section 1512(b)(3), which was charged in the indictment. The court particularly noted that the district court's action in that case did not constitute "a variance," or a mere "failure to instruct." It "concluded that the district court's misinstruction resulted in an amendment to the indictment." Id.

The failure of the district court to properly charge the jury in counts two and three resulted in a violation of Petitioner's Fifth Amendment rights to be tried on a charge returned by a grand jury. This becomes even more problematic in light of the recent Supreme Court decision of Molina-Martinez v. U.S., 14-8913 (April 20, 2016). In that case a federal district court judge committed error when it utilized the incorrect guideline even though the defendant's "ultimate sentence (fell) within what would have been the correct Guidelines range..." Id., page 1.

In the instant case, the district court judge incorrectly instructed the jury on counts two and three, and compounded the error by sentencing Petitioner based upon an erroneous finding by the U.S. Probation Department that the Petitioner was guilty of first

degree murder. Although a district court judge has broad discretion to sentence based upon a finding of "preponderance of evidence" rather than the "beyond-a-reasonable-doubt" standard, the combination of errors violated Petitioner's Fifth Amendment rights, and brought him under the umbrella of the Moina-Martinez holding that "when a district court adopts an incorrect Guidelines range, there is a reasonable probability that the defendant's sentence would be different absent the error. Id., page 2, noting that "Other Courts of Appeals have concluded that a district court's application of an incorrect Guidelines range can itself serve as evidence of an effect on substantial rights." U.S. v. Sabillon-Wmana, 772 F.3d 1328, 133 (CA19 2014). As we know, Molina-Martinez, which decided a matter of substantive law, is retroactive in application.

## CONCLUSION

Petitioner has established that the facts show that he was never charged in his indictment with the charges for which he was sentenced.

Petitioner moves this Honorable Court grant his Section 2241 Petition, appoint an attorney for any evidentiary hearing this Court might deem appropriate, and grant him reasonable bail during the pendency of any judicial proceedings, and for all other relief this Court may deem just and proper.

Respectfully submitted:

By: _____

Ricardo M. Suggs

13

## CERTIFICATE OF SERVICE

I, Ricardo B. Suggs, do hereby certify that he caused to be mailed a true and correct copy of this Petition to the Clerk of Court for the United States District Court, by First Class Mail on June 15, 2016, and by simultaneously mailing a copy to the United States Attorney's Office,

Signed:

_*[signature]*_